## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

ERIN JO CHASKEY,

Plaintiff,

v.

ONAWAY AREA COMMUNITY
SCHOOLS; MARTY MIX; ROD
FULLERTON; MICHAEL BENSON;
MICHAEL HART; MINDY HORN;
PRESQUE ISLE COUNTY; JOSEPH
BREWBAKER; DAVID SCHMOLDT; AND
KENNETH RADZIBON

Defendants

Case No. 1:22-CV-11380

HON: THOMAS L. LUDINGTON

MAG. PATRICIA T. MORRIS

**PLAINTIFF'S FIRSTAMENDED COMPLAINT**

JURY TRIAL DEMANDED

Daren A. Wiseley (P85220)
WISELEY LAW, PLLC
Attorney for Plaintiff
41½ E. Bacon St.
Hillsdale, MI 49242
517-234-4020
dwise@defendyourrights.law

Michael T. Berger (P77143)
ROSATI SCHULTZ JOPPICH &
AMTSBUECHLER PC
Attorneys for Presque Isle Co,
Brewbaker, Schmoldt and
Radzibon
27555 Executive Drive, Ste. 250
Farmington Hills, MI 48331
(248) 489-4100
mberger@rsjalaw.com

Gregory W. Mair (P67465)
O'NEIL WALLACE
Attorney for Defendants School
District, Mix, Fullerton,
Benson and Horn
300 St. Andrews Rd., Ste. 302
Saginaw, MI 48605
(989) 790-0960
gmair@owdpc.com

**NOW COMES** the Plaintiff, ERIN JO CHASKEY, by and through her attorney, Daren A. Wiseley, and together bring this First Amended Complaint against the above-named Defendants, their employees, agents, and successors in office, pursuant to FRCP Rule 15(a)(1). Plaintiff alleges the following facts in support of this complaint herein based on information and belief:

## INTRODUCTION

1.      This case seeks to protect and vindicate statutory and fundamental constitutional rights. Plaintiff Erin Chaskey brings a civil rights action under the First, Fourth, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, and for other statutory and constitutional violations, challenging Defendants' acts, policies, practices, customs, and procedures, which deprived her of the right to: freedom of speech, freedom to petition, freedom from unreasonable searches and seizures, freedom from unreasonable arrests and prosecutions, due process of law, and other constitutional and statutory rights.

2.      Ms. Chaskey was the lone target of the egregious, retaliatory, and vindictive acts of the Defendants, simply for exercising her fundamental right to the freedom of speech and petition guaranteed by the First Amendment, and a willingness to stand up and investigate the activities, as a concerned parent, at her son's public school.

3.      The Defendants in this complaint conspired against Ms. Chaskey in a prosecution that they knew was fraudulent, simply to silence her and protect themselves from the truth being released to the public. These spineless actors defamed Ms. Chaskey's character and violated her constitutional rights simply to protect their reputations. Defendants' motive was to humiliate Ms. Chaskey and silence her from further action in exposing them.



2

4.      Defendants failed to realize that Ms. Chaskey was "relentless". While individuals with lesser integrity and character would've given in, she refused to take a plea offer and "go away." As they realized this, the Defendants doubled down, and the desperate actions got more ridiculous throughout the course of the prosecution - causing further injury to Ms. Chaskey.

5.      Now that the woefully insufficient criminal complaint has been dismissed, correctly citing that no crime had even occurred, Ms. Chaskey brings this action for the injuries she has so wrongly suffered.

## PARTIES

6.      Ms. Chaskey is a resident of City of Onaway, County of Presque Isle, State of Michigan. Her son is a tenth grader at Onaway and her daughter formerly attended Onaway. Prior to the actions of Defendants, Ms. Chaskey had been a very involved parent, active within Onaway for many years - including as a volunteer, teacher's aide, and class advisor. Her outspoken criticism of Onaway Area Community Schools for complete dereliction of duty to oversee activities within the school and failing to comply with their own bylaws led to the retaliation as described in this complaint, and the harm she so needlessly and wrongfully suffered.

7.      Defendant Onaway Area Community Schools (hereinafter, "Onaway") is a public school district, operating a public-school system in Presque Isle County, Michigan and is the governmental body responsible for operating Onaway High School. Onaway Area Community Schools operates under the laws of the State of Michigan, and its office is located at 4549 M-33 Onaway, MI. Onaway is the body responsible for managing, adopting, implementing, and enforcing all school policies and the student code of conduct.



3

8.      Defendant Marty Mix is the Principal of Onaway High School, and at all times mentioned herein was acting under color of law, in his individual and official capacities, and within the course and scope of his employment. He is being sued in his individual and official capacities.

9.      Defendant Rod Fullerton is the former Superintendent of Onaway and was and at all times mentioned herein was acting under color of law, in his individual and official capacities, and within the course and scope of his employment. He is being sued in his individual and official capacities.

10.     Defendant Michael Benson is a Board Member of Onaway, and at all times mentioned herein was acting under color of law, in his individual and official capacities, and within the course and scope of his employment. He is being sued in his individual and official capacities.

11.     Defendant Michael Hart is the Board President of Onaway, and at all times mentioned herein was acting under color of law, in his individual and official capacities, and within the course and scope of his employment. He is being sued in his individual and official capacities.

12.     Defendant Mindy Horn is/ was the Interim Superintendent/ Superintendent of Onaway, and at all times mentioned herein was acting under color of law, in her individual and official capacities, and within the course and scope of her employment. She is being sued in her individual and official capacities.

13.     Defendant Presque Isle County is a municipal corporation and governmental subdivision organized and existing under the laws of the State of Michigan.



4

14.     Defendant Joseph Brewbaker is the Presque Isle County Sherriff, employed by Presque Isle County Sherriff's Office, and at all times mentioned herein was acting under color of law, in his individual and official capacities, and within the course and scope of his employment. He is being sued in his individual and official capacities.

15.     Defendant David Schmoldt is a deputy employed by the Presque Isle County Sherriff's Office and the Resource Officer for Onaway, and at all times mentioned herein was acting under color of law, in his individual and official capacities, and within the course and scope of his employment. He is being sued in his individual and official capacities.

16.     Defendant Kenneth Radzibon is the Presque Isle County Prosecuting Attorney, employed by Presque Isle County, and at all times mentioned herein was acting under color of law, in his individual and official capacities, and within the course and scope of his employment. He is being sued in his individual and official capacities.

## JURISDICTION AND VENUE

17.     This action arises under the Constitution and laws of the United States and of the State of Michigan. Jurisdiction is conferred on this court pursuant to Article III of the United States Constitution; 28 U.S.C. § 1331; 28 U.S.C. § 1343(a)(1), (2), and (3); and 42 U.S.C. § 1983, 1985, 1986, and 1988.

18.     This Court has supplemental jurisdiction regarding the remaining state claims pursuant to 28 U.S.C. § 1367.

19.     Plaintiff's claims for damages are authorized under 42 U.S.C. § 1983, and by the general legal and equitable powers of this court.



20.     Venue is proper under 28 U.S.C. § 1391(b) because the events giving rise to

Plaintiff's claims occurred in Presque Isle County, in the Eastern District of Michigan.

### STATEMENT OF FACTS

21.     The events leading up to this complaint began in July 2020, when Ms. Chaskey

became aware that Ms. Wregglesworth, a teacher at her son's school, was using a Go Fund Me to

raise money for a controversial and political book to be taught in her class. After further

research, Ms. Chaskey became concerned the classroom instruction was very biased. While she

saw the educational value of the book, and never opposed it being taught, Ms. Chaskey merely

wanted oversight. A very involved member in the local community her entire life (she had been

her daughter's junior class advisor at Onaway and even been a teacher's aide and volunteer

there) and knowing most of the school administration personally, she approached Defendant Mix

seeking answers, to no avail.

22.     In October 2020, while at Onaway as the class advisor, she noticed a child, visibly

upset. The teacher had told the student, "Your white privilege is showing" and the classroom

laughed at him, causing him much embarrassment, validating Ms. Chaskey's concerns. She

started hearing other concerning things and again brought them to Defendant Mix.

23.     Defendant Mix had been a close, family friend of Ms. Chaskey's, even going on

family vacations together, (up until he conspired to ban her from Onaway and set her up for a

false felony) so Ms. Chaskey assumed she could trust him to look into the matter with diligence.

However, Defendant Mix's actions couldn't have been farther to the contrary.

24.      When Defendant Mix failed to show any interest in looking into the matter, she

contacted the Superintendent, Defendant Fullerton. Ms. Chaskey inquired about the curriculum,



6

specifically concerned about bias. Defendant Fullerton assured her there was nothing to worry about, but in his email correspondences with her, was unwilling to put any effort into the matter (Ex. A).

26.    Ms. Chaskey started hearing of more instances that concerned the teacher, including a video the students watched in class saying "Fu**" roughly 39 times. Seeking accountability from Onaway, she attended School Board meetings. In July 2021, she spoke up about her concerns, specifically avoiding specific instances and names in an effort to work together as a community to resolve these issues, as opposed to being hostile. (Ex. B).

26.    The Board was frustrated by Ms. Chaskey bringing their lack of oversight and failure to abide by their own bylaws to public light. Defendant Hart's excuse for the lack of oversight in the curriculum and movies being viewed was "that will take a long time."

27.    Since the Board was disinterested in her concerns, Ms. Chaskey started filing Freedom of Information Act (FOIA) requests (Ex. C). Much to her dismay, the officials had used very derogatory language about her in the emails, such as, "she's [Chaskey] relentless."

28.    Even worse, when Onaway realized Ms. Chaskey was gaining access to their emails, Onaway started deleting them and omitting portions of her requests - which is obvious from the chain of communication. When confronted on this, Defendant Fullerton's excuse for the omitted portions was because he "didn't think they were relevant" which is contrary to the Freedom of Information Act and Michigan's retention laws. *Id.*

29.    Ms. Chaskey took the time to learn and memorized the Board's entire bylaws. She soon found out the bylaws had been disregarded. For instance, there was no curriculum committee, resulting in zero oversight or awareness of what was taught at Onaway:



"There shall be one Board standing committee on curriculum. The curriculum committee shall study and make recommendations to the whole Board regarding any curriculum planning, requests, structure, modification, revision, or other change." *Onaway Board Bylaws 1180 Board Committees*.

30.     By this time, she had learned about the controversial, "Critical Race Theory" being taught, further confirming her concerns about bias. Also, by now many parents had approached Ms. Chaskey, stating how they, too, had brought concerns to Onaway, which were also swept under the rug.

31.     Ms. Chaskey then asked Defendant Fullerton if he knew the bylaws, to which he admitted, "I guess I don't." Within a week, he announced he was "taking another job offer."

32.     A board member also resigned at the same time, citing that Ms. Chaskey was correct that Onaway had failed to abide by the retention schedule as required by Michigan law.

33.     The lack of oversight and gross negligence was put on full display at the next Board meeting, Ms. Chaskey asked Defendant Hart if he had watched the movie. He responded, "I don't let that kind of filth into my house." Yet Defendant Hart apparently had no problem letting it play in the school for which he was the Board President of. The board members didn't even know what was being taught. One of them even admitted, "I can't remember the last time we even approved a curriculum!"

34.     It was then announced that Defendant Fullerton would have the applications for the vacant board position. Ms. Chaskey saw this as an excellent opportunity to start bringing oversight to Onaway. On or about October 13, 2021, around 3:14p.m. she went to the Superintendent's Secretary's Office, where parents are instructed to go and check-in. She was



unable to receive an application from Mr. Fullerton, however, and was told "they aren't ready" and Ms. Chaskey stated she would "come back tomorrow."

35.     On or about October 14, that is exactly what she did; returning to the same office at the same time, she waited by the secretary's desk to receive an application. As she waited, she heard from all the way down the hall, in the Superintendent's office, Defendants Fullerton and Benson ***talking about her.*** Among the discussion, was the fact that Defendants Fullerton and Mix had already agreed avoid using email, specifically to avoid having to comply with requests made by Ms. Chaskey pursuant to FOIA, and that Defendant Benson would join in too. They also made many derogatory comments about Ms. Chaskey in an area where others could hear. She further heard them admit to knowing about some of the biased teaching and the movie, with statements such as:

- "Good thing she [Chaskey] didn't hear about calling the girl a cu**!"

- "[Chaskey] gets her information [about the school] from tiktok."

- Defendant Fullerton admitting he "called her [Chaskey] everything but a nice person."

- And that Defendants Fullerton and Mix were avoiding communication by email so Ms. Chaskey could not FOIA the correspondence.

36.     Then, Defendant Mix suddenly appeared in the office where Ms. Chaskey was waiting. He went back to the Superintendent's office down the hall and called out Defendants Fullerton and Benson, who were very startled and angry to see her. All three Defendants clearly had a motive to silence her and prevent her from exposing the truth about their lies.

37.     Interestingly, even though she had been told the day before that she needed to come back for the School Board Application, Defendant Fullerton then told Ms. Chaskey that he didn't have any applications and they are to be retrieved online.



38.     On or about October 20, 2021, Ms. Chaskey was approached by Defendant Schmoldt with a search warrant for her cell phone, which was then seized. In support of the search warrant, Defendant Schmoldt, in his affidavit stated, "Chaskey is observed on video footage making a video recording of a private conversation that is occurring out of the view of the video camera system and ***in an area that Chaskey should not be as a private citizen.***" (Ex. E) [Emphasis added].

39.     The same day, Ms. Chaskey received a "no trespass" order from Defendant Fullerton barring her from school grounds. (Ex. D). The no trespass claimed that she "**stood outside his [Defendant Fullerton's] door"** and had committed a felony. *Id.*

40.     As a very involved parent in the school and her child's education, Ms. Chaskey was extremely hurt and devastated by the retaliatory acts taken against her, simply for trying to hold Onaway accountable. She could no longer participate in her son's extracurricular activities or attend his sporting events. Ms. Chaskey couldn't even pick up or drop off her son from school, which she always had done. One example of the unnecessary problems Onaway caused her is that her son forgot his gym shoes for after school weightlifting; because she was not allowed on the premises, she couldn't bring them to him, forcing him to miss weightlifting.

41.     The Defendants knew the one way they could hurt Ms. Chaskey – by taking her out of being involved in her son's education – and that is exactly what they did.

42.     Ms. Chaskey contacted her present counsel to file a civil suit hoping to get the unlawful no trespass lifted so she would be allowed on school grounds and not miss anymore of her son's basketball games or other extracurricular activities.



43.    **_Within one day_** of the civil action being filed, even though it had been 20 days after her phone had been seized, a felony warrant was filed against Ms. Chaskey.  Clearly an effort to stop Ms. Chaskey from exposing what Defendants Fullerton, Benson, and Mix had done to her.[1]

44.    Prior to this she had never had so much as a speeding ticket. Facing a felony charge with a penalty of up to two years in prison on top of the "no trespass" further devastated her. Defendants Fullerton, Mix, Hart, and Brewbaker used this as an opportunity to spread rumors about her and defame her character to discredit Ms. Chaskey and destroy her credibility – resulting in further humiliation.

45.    Some examples of the defamatory acts include, but are not limited to:

- Defendant Fullerton made defamatory statements in his "no trespass" issued to Ms. Chaskey to everyone he sent a copy of it to. Likewise, he made these statement to others at Onaway.

- Defendant Hart told individuals in Petoskey that Ms. Chaskey "did it" [committed a felony] and that she would be offered a good deal from the prosecutor.

- Defendant Mix made defamatory statements to ticket takers at Onaway in an attempt to "be on the lookout for her." He also communicated them to one or more other individuals.

- Defendant Brewbaker said that "he watched the video and she [Ms. Chaskey] committed a crime" to at least one media host.

---

[1] The civil action was later voluntarily dismissed.



46.     Even though Ms. Chaskey was deeply hurt and now faced a felony, she maintained her innocence at all times, and refused to take a plea deal to make the case and lies being disseminated about her "go away."

47.     In support of his sworn affidavit for the arrest warrant, Defendant Schmoldt stated that [Chaskey] **"is seen holding her phone down the hallway** towards the Superintendent's Office at 3:16:06 P.M." [emphasis added] (Ex. E).

48.     The video does NOT show either: Ms. Chaskey was in an area she should not be as a private citizen, OR that she was holding her phone down the hallway. When pressed on this issue at the preliminary examination by Ms. Chaskey's counsel, Defendant Schmoldt eventually admitted this fact. Defendant Schmoldt therefore committed perjury twice: first on the search warrant and then on the arrest warrant. Another example of the concerted effort to punish, defame, and humiliate Ms. Chaskey into submission.

49.     The perjury doesn't end there. In Defendant Fullerton's "Victim Impact Statement", which interestingly wasn't made until nearly two months after the date of the incident, and after the preliminary exam, he stated, "Mrs. Chaskey took it upon herself to ***walk down the hallway and record just steps from my inner office door.***" [Emphasis added] (Ex. F). It is notable that the narrative had changed. Originally, she was being prosecuted for allegedly going down a hallway that "she was not supposed to be in." (Which was still false). Apparently, Defendant Fullerton needed to take the false narrative further in desperate hopes to bolster the false prosecution. The entire statement, that Defendant Fullerton had sworn to as true, was completely false.

50.     Likewise, the "no trespass" was issued under false pretenses. As the allegations Defendant Fullerton had made about Ms. Chaskey were untrue.



51.     The search warrant, while secured under a perjured statement, specified that the property to be searched for and seized from Ms. Chaskey's phone was specifically **"any and all videos and text messages in reference to potential video recordings that are taken on 10/14/2021."**

52.     However, Defendant Schmoldt didn't even stay within the confines of the search warrant for which he had committed perjury to obtain, requesting, "This information is to include but is not limited to contact listing, call logs, text messages (SMS, MMS, IM Chat), online social chats (Facebook, KiK, Skype, etc.) photographs, videos, calendar, and web history."

53.     Defendant Horn replaced Defendant Fullerton as Interim Superintendent/ Superintendent after he conveniently "took another job." With Defendant Fullerton gone, Ms. Chaskey reached out to a board member about rescinding the no trespass. The board member took this to Defendant Horn's attention, but she declined to stop the unlawful no trespass that was depriving Ms. Chaskey of her fundamental right to determine and direct the care, teaching, and education of her son.

54.     On February 14, 2022, a bond hearing was held; the court dismissed the bond condition baring Ms. Chaskey from being on the premises of Onaway, citing absolutely zero basis in law for it. Even after this information being presented to the Prosecutor (Defendant Radzibon) continued to press for the bond conditions. He cited "FERPA"[2] as a reason for this, which of course has no relevance to the case. Just another example of the desperate attempt to prosecute and humiliate Ms. Chaskey at all costs.

---

[2] The Family Educational Rights and Privacy Act (FERPA) (20 U.S.C. § 1232g; 34 CFR Part 99) is a Federal law that protects the privacy of student education records. The law applies to all schools that receive funds under an applicable program of the U.S. Department of Education.



55.     With the court ordered no trespass dropped, Ms. Chaskey reached out to Defendant Horn about dropping Onaway's no trespass. It was then requested that Ms. Horn again reconsider the no trespass. At first, she declined to respond but eventually decided, quite arbitrarily, that she "doesn't have a problem with [Ms. Chaskey] attending [her son's] home basketball games. The remainder of the no-trespass order will stay…"

56.     This meant that Ms. Chaskey could attend the 2-3 home games left in the season, but not do other things like take pictures at her son's homecoming dance.

57.     Counsel responded that this arbitrary decision made no sense and was in violation of school policy. (Ex. G). If Ms. Chaskey was a somehow a "threat" then why would she be allowed on the premises for some things but not others?

58.     In spite of this notice, Defendant Horn refused to rescind the no trespass, knowingly violating Ms. Chaskey's fundamental rights.  Defendant Horn needed to hold on to what power she could over Ms. Chaskey, to demoralize and humiliate her for as she could.

59.     An email from Board Member Joshua Vanhuysen to Defendant Horn discussed "reasons to keep Aaron [Erin Chaskey] out of the school during school hours and the court case going on is to keep the optics for her." This shows what was really going on behind the scenes at Onaway – willing to deprive her of involvement in her son's life and keep a fraudulent felony going just because it was convenient for them.

60.     Onaway also took further retaliatory measures simply to harass Ms. Chaskey while the false prosecution was being litigated. One example is Onaway incorrectly marking her son for "unexcused absences." While these types of matters were easily resolved prior to the incidents in this complaint, the school issued her a letter stating Ms. Chaskey had "24 hours to



respond." She responded immediately to remedy the situation but was not contacted until 4 days later by Defendant Horn.

61.     Even though the search warrant, complaint, and victim impact statement contained false, perjured information, and the video evidence made that apparent, Defendant Radzibon signed off on all documents, and found it incumbent upon himself to maliciously prosecute the false felony against Ms. Chaskey.

62.     Defendant Radzibon was so desperate to keep the ridiculous prosecution against Ms. Chaskey that he cited completely irrelevant law. Such as: "FERPA" in the bond hearing – which only a school official could be in violation of; and citing *Griswold v. Connecticut* in his brief in opposition to Defendant's motion to dismiss – a case every first-year law student knows is about married couples right to contraceptives – totally irrelevant to the case.

63.     On March 14, 2022, Oral argument was held on the motion to dismiss. It was dismissed, with Judge Gauthier citing that there was no evidence a crime was committed. He also made a reference to the fact that Defendant Schmoldt was right to walk back his original [perjured] testimony about Ms. Chaskey.

64.     Even after the case had been dismissed, Defendant Horn would not rescind the no trespass. Defendant Horn apparently disagreed with the Judge, based on her communications, even though she has no legal expertise. When contacted, she claimed that she was waiting to see if the Prosecutor would refile charges, even though she knew the Judge had said there was a lack of evidence, and Ms. Chaskey's presence at the school was in no way a threat.



65.     Defendant Horn was still desperately trying to hold on to what power she could over Ms. Chaskey. After Ms. Chaskey had contacted her multiple times, Defendant Horn eventually rescinded it, several days later.

66.     Even after the case was dismissed, Defendants would not retract their defamatory statements against Ms. Chaskey. The damage to her reputation had been done and they hoped to keep that image in the public.

67.     Defendant Radzibon seemed not to get the message and continued his desperate attempt to prosecute Ms. Chaskey by filing a motion for reconsideration. Judge Gauthier quickly denied it, once again pointing out that Defendant Radzibon had not brought any evidence that a crime had been committed.

68.     The false and malicious prosecution obtained by Defendants under false pretenses resulted in complete humiliation to Ms. Chaskey, such as being arrested and having it blast all over social media that she was arrested for a felony.

69.     Defendants' vile and vindictive behavior in the baseless "no trespass" simply to spite Ms. Chaskey resulted in her missing 5 months of her son's basketball games, not being able to take her him to and from school, not being able to take pictures at the homecoming dance, and other missed extracurricular activities. She also missed most of her daughter's (who attended a different school) senior year because she was caught up fighting the concocted felony. The bond conditions made her unable to leave the state so she couldn't plan family vacation. Precious time with her children she will NEVER get back.



<u>COUNT I</u>
<u>42 U.S.C. § 1983</u>
<u>VIOLATION OF THE FIRST AND FOURTH AMENDMENTS - RETALIATION</u>

70.     Plaintiff incorporates by reference all preceding paragraphs as if fully restated herein.

71.     The First Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, prohibits the government from "abridging the freedom of speech."

72.     Ms. Chaskey's complaints as referenced above addressed matters of public concern that outweighed any governmental interest in suppressing Plaintiff's speech.

73.     Plaintiff's speech was speech protected by the First Amendment to the United States Constitution.

74.     As a result of Plaintiff's protected activity, Defendants retaliated against Plaintiff by issuing a "no trespass" so she could not be involved in her son's school activities and commencing a false prosecution to silence and discredit her.

75.     Plaintiff's complaints and criticism to the school board, school administration, and civil complaint filed were all activities protected by the First Amendment to the United States Constitution.

76.     Defendants tarnished Plaintiff's reputation, issued, and kept in place the "no trespass" even though it was not issued pursuant to the procedure outlined in its own bylaws; continued depriving her of her fundamental rights after several requests to rescind it after being put on notice; and commenced a false prosecution in reaction to Plaintiff's exercise of her First Amendment rights.



77.     Defendants' conduct was designed to: silence Plaintiff and prevent her from exposing the Defendants; prevent Plaintiff from making complaints and drawing public awareness to activities at Onaway; and would likely prevent an ordinary person from continuing to engage in the exercise of free speech.

78.     Defendants' conduct was done with no justifiable means whatsoever.

79.     Defendants' conduct violated Plaintiff's constitutional rights and as such, they are not entitled to qualified immunity with respect to their actions.

80.     As a direct and proximate cause of the conduct complained of herein, Plaintiff suffered a deprivation of clearly established rights protected and secured by the First Amendment to the United States Constitution and by other laws, including her right to free speech, her right to be free from retaliation for exercising her right to free speech, and her right to not face criminal charges/ prosecutions for exercising those rights.

81.     As a direct or proximate result of these actions and inactions by Defendants, Plaintiff sustained and continues to sustain injuries, including but not limited to physical pain and suffering, mental anguish, fright, shock, embarrassment, humiliation, mortification, damage to reputation, disruption of personal life, loss of enjoyment of the ordinary pleasures of living, medical conditions, post-traumatic stress disorder, and other damages known and unknown.

### COUNT II
### 42 U.S.C. § 1983
### VIOLATION OF THE FIRST AMENDMENT – RIGHT TO PETITION

82.     Plaintiff incorporates by reference all preceding paragraphs as if fully restated herein.



83.     Ms. Chaskey's filing of a civil rights lawsuit as referenced above constituted protected conduct.

84.     Ms. Chaskey's participation in a civil lawsuit to vindicate her legal rights and her access to the courts are protected activities and is protected under the First Amendment of the United States Constitution.

85.     The following day, a felony charge was issued against her.

86.     Ms. Chaskey's right to file a lawsuit for redress of grievances and the right of access to the courts is a right protected by the First Amendment to the United States Constitution.

87.     Defendants retaliated against Plaintiff for filing a lawsuit as referenced herein, which clearly and unequivocally violated Plaintiff's First Amendment rights.

88.     Because of Plaintiff's protected activity, Defendants took adverse actions against Plaintiff.

89.     That as a direct and proximate result of Defendants' actions, Plaintiff suffered a loss of her First Amendment rights.

90.     As a direct or proximate result of these actions and inactions by Defendants, Plaintiff sustained and continues to sustain injuries, including but not limited to physical pain and suffering, mental anguish, fright, shock, embarrassment, humiliation, mortification, damage to reputation, disruption of personal life, loss of enjoyment of the ordinary pleasures of living, medical conditions, post-traumatic stress disorder, and other damages known and unknown.



## Count III
## 42 U.S.C. § 1983
## VIOLATION OF THE FOURTH AMENDMENT
## SEIZURE WITHOUT PROBABLE CAUSE

91.     Plaintiff incorporates by reference all preceding paragraphs as if fully restated herein.

92.     The Fourth Amendment to the United States Constitution establishes that Plaintiff has the right to be free from the deprivation of life, liberty, and bodily security without due process of law and to be free from unreasonable searches and seizures.

93.     Defendants acted unreasonably and failed in their duty when they took an active role in having Ms. Chaskey falsely arrested/detained/seized and/or causing her to be arrested/detained/seized without considering the totality of the circumstances and ignoring the evidence obtained during the course of the criminal investigation.

94.     Defendants acted unreasonably and failed in their duty when they took an active role in having Ms. Chaskey's phone searched and seized from perjured testimony and without considering the totality of the circumstances and ignoring the evidence obtained during the course of the criminal investigation.

95.     Defendants lacked probable cause to have any charges against Plaintiff initiated.

96.     Defendants lacked probable cause to have Ms. Chaskey arrested, and otherwise manufactured probable cause and lied in order to ensure her arrest and/or ensure that charge was brought against her.



97. Defendants lacked probable cause to have Ms. Chaskey's cell phone searched and seized, and otherwise manufactured probable cause and lied in order to ensure the search warrant would be brought against Plaintiff.

98. Defendants acted under color of law and are not entitled to qualified immunity because they violated Plaintiff's clearly established Fourth Amendment right to be free from unreasonable searches and seizures.

99. Defendants' illegal and unconstitutional acts were the direct and proximate cause of Plaintiff's deprivation of her Fourth Amendment rights.

100. As a direct or proximate result of these actions and inactions by Defendants, Plaintiff sustained and continue to sustain injuries, including but not limited to physical pain and suffering, mental anguish, fright, shock, embarrassment, humiliation, mortification, damage to reputation, disruption of personal life, loss of enjoyment of the ordinary pleasures of living, medical conditions, post-traumatic stress disorder, and other damages known and unknown.

## COUNT IV
## 42 U.S.C. § 1983
## VIOLATION OF THE FOURTH AMENDMENT – FALSE ARREST

101. Plaintiff incorporates by reference all preceding paragraphs as if fully restated herein.

102. The Fourth Amendment to the United States Constitution establishes that Plaintiff has the right to be free from the deprivation of life, liberty, and bodily security without due process of law and to be free from unreasonable searches and seizures.



103.     At all material times, Defendants acted under color of law and unreasonably when they violated Plaintiff's Fourth Amendment rights when they falsely arrested and falsely detained Plaintiff without probable cause.

104.     At all material times, Defendants acted under color of law and unreasonably when they violated Plaintiffs' Fourth Amendment rights when they arrested and caused to have charges brought against Plaintiff without first completing a full investigation.

105.     Defendants acted unreasonably and failed in their duties when they falsely arrested/detained/seized Plaintiff without considering the totality of the circumstances.

106.     Defendants acted under color of law and are not entitled to qualified immunity because they violated Plaintiff's clearly established Fourth Amendment right to be free from unreasonable searches and seizures.

107.     Defendants' illegal and unconstitutional acts were the direct and proximate cause of Plaintiff's deprivation of her constitutional rights.

108.     As a direct or proximate result of these actions and inactions by Defendants, Plaintiff sustained and continues to sustain injuries, including but not limited to physical pain and suffering, mental anguish, fright, shock, embarrassment, humiliation, mortification, damage to reputation, disruption of personal life, loss of enjoyment of the ordinary pleasures of living, medical conditions, post-traumatic stress disorder, and other damages known and unknown.

### COUNT V
### 42 U.S.C. § 1983
### VIOLATION OF THE FOURTH AMENDMENT – MALICIOUS PROSECUTION
### MCL 600.2907

109.     Plaintiff incorporates by reference all preceding paragraphs as if fully restated herein.



110.    As described above, Defendants violated Ms. Chaskey's right to be free from criminal prosecution without probable cause, said right being secured by the Fourth Amendment of the United States Constitution.

111.    In Michigan, a cause of action for malicious criminal prosecution arises when one person causes another to be arrested for a crime for which the arrestee is ultimately found not guilty or against whom the criminal case is dismissed. A plaintiff must demonstrate that the civil defendant acted with an ulterior purpose otherwise improper in the normal conduct of the proceeding. *Pilette Indus, Inc v Alexander*, 17 Mich App 226, 169 NW2d 149 (1969).

112.    MCL 600.2907 provides in part:

[E]very person who shall, for vexation and trouble or maliciously, cause or procure any other to be arrested, attached, or in any way proceeded against, by any process or civil or criminal action, or in any other manner prescribed by law... shall be liable to the person so arrested, attached or proceeded against, in treble the amount of the damages and expenses…

113.    Defendants initiated, through the use of falsehood, the aforementioned criminal prosecution of Plaintiff without probable cause.

114.    At any point in time, Defendants could have used THEIR OWN evidence to dismiss the charges and end the baseless and malicious prosecution against Ms. Chaskey.

115.    The aforementioned criminal proceedings were resolved in Plaintiff's favor; the charge was dismissed citing a crime had not even been committed.

116.    The primary purpose of the prosecution was malice or other than that of bringing the alleged offender to justice.

117.    Plaintiff suffered a special injury as a result of Defendants' actions.



118.     As a consequence of the criminal prosecution initiated by Defendants, Plaintiff suffered an unreasonable and unconstitutional deprivation of liberty and damages that were the direct and proximate cause of Defendants' actions and/or inactions. Interestingly, they didn't use much of their own evidence. Ms. Chaskey actually made just as many references to their evidence because it proved her innocence.

119.     As a direct or proximate result of these actions and inactions by Defendants, Plaintiff sustained and continues to sustain injuries, including but not limited to physical pain and suffering, mental anguish, fright, shock, embarrassment, humiliation, mortification, damage to reputation, disruption of personal life, loss of enjoyment of the ordinary pleasures of living, medical conditions, post-traumatic stress disorder, and other damages known and unknown.

### COUNT VI
### 42 U.S.C. § 1983
### VIOLATION OF THE FOURTH AMENDMENT
### EXCEEDING SCOPE OF SEARCH WARRANT

120.     Plaintiff incorporates by reference all preceding paragraphs as if fully restated herein.

121.     Defendants lacked probable cause to have Ms. Chaskey's cell phone searched and seized, and otherwise manufactured probable cause and lied in order to ensure the search warrant would be brought against her as described above.

122.     Said search warrant authorized the search and seizure of Ms. Chaskey's phone was limited to "[a]ny and all *videos and text messages in reference to potential video recordings that are taken on 10/14/2021.*" [emphasis added].

123.     Defendant Schmoldt instead initiated the search for:



"[e]xtraction and analysis of ***all available information contained in the submitted devices***, seeking evidence and information related to an ongoing investigation. This information is to include, but is not limited to ***contact listing, call logs,*** text messages (SMS, MMS, IM, Chat), ***online social chats (Facebook, Kik, Skype, etc..) photographs,*** videos, ***calendar and web history.***"

124.     The search of her **entire** cell phone, containing very personal and private information, was far beyond the very explicit scope of the search warrant the magistrate had signed.

125.     Defendant Schmoldt's actions were a blatant disregard for the law and invasion of privacy, an abomination to the Fourth Amendment.

126.     Defendants acted under color of law and are not entitled to qualified immunity because they knowingly violated Plaintiff's clearly established Fourth Amendment right to be free from unreasonable searches and seizures.

127.     Defendants' illegal and unconstitutional acts were the direct and proximate cause of Plaintiff's deprivation of her Fourth Amendment rights.

128.     As a direct or proximate result of these actions and inactions by Defendants, Plaintiff sustained and continues to sustain injuries, including but not limited to physical pain and suffering, mental anguish, fright, shock, embarrassment, humiliation, mortification, damage to reputation, disruption of personal life, loss of enjoyment of the ordinary pleasures of living, medical conditions, post-traumatic stress disorder, and other damages known and unknown.



## COUNT VII
## 42 U.S.C. § 1983
## VIOLATION OF THE FOURTEENTH AMENDMENT – DUE PROCESS

129.     Plaintiff incorporates by reference all preceding paragraphs as if fully restated herein.

130.     The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that "[n]o State shall .... deprive any person of life, liberty, or property without due process of law."

131.     Ms. Chaskey had a liberty interest in her good name, her good reputation, her liberty, her property, and her care and control of her children.

132.     Ms. Chaskey received no opportunity to be heard, or opportunity to appeal the "no trespass."

133.     There was no interest in denying her due process because she did nothing to warrant it. It was strictly to silence and humiliate her.

134.     By their conduct, the individually named Defendants showed intentional, outrageous, and reckless disregard for Plaintiff's clearly established constitutional and statutory rights.

135.     There was no compelling interest in denying Ms. Chaskey Due Process. It was simply to silence and humiliate her.

136.     Defendants' actions were egregious and arbitrary and "shocks the conscience" and therefore violated the decencies of civilized conduct.



137.   Defendants abused their power and ultimately used their collective powers as an instrument of oppression against Plaintiff.

138.   Defendants had a duty to act in such a manner so as to avoid violations of Plaintiff's constitutional rights.

139.   Defendants' acts were at all times objectively unreasonable and in violation of Plaintiff's clearly established rights under the Fourteenth Amendment to the United States Constitution which proximately resulted in damages and injuries to Plaintiff.

140.   As a direct and proximate result of these actions and inactions by Defendants, Plaintiff sustained and continues to sustain injuries, including but not limited to physical pain and suffering, mental anguish, fright, shock, embarrassment, humiliation, mortification, damage to reputation, disruption of personal life, loss of enjoyment of the ordinary pleasures of living, medical conditions, post-traumatic stress disorder, and other damages known and unknown.

### COUNT VIII
### 42 U.S.C. § 1983
### VIOLATION OF THE FOURTEENTH AMENDMENT – DUE PROCESS
### VIOLATION OF 1963 CONST, ART 1, § 17
### VIOLATION OF MCL 380.10

141.   Plaintiff incorporates by reference all preceding paragraphs as if fully restated herein.

142.   MCL § 380.10 provides:

It is the natural, fundamental right of parents and legal guardians to determine and direct the care, teaching, and education of their children. The public schools of this state serve the needs of the pupils by cooperating with the pupil's parents and



legal guardians to develop the pupil's intellectual capabilities and vocational skills in a safe and positive environment.

143.    "[D]ue process precludes a government from interfering with parents' fundamental liberty interest in making decisions regarding the care, custody, and control of their children absent a compelling state interest." *Dep't of Human Servs. v. Johnson* (In re A.P.), 283 Mich. App. 574, 770 N.W.2d 403 (2009), citing *Troxel v Granville*, 530 US 57, 120 S Ct 2054 (2000).

144.    By reason of the aforementioned training, supervision, acts, policies, practices, customs and procedures created, adopted, and enforced under color of state law, Defendants deprived Plaintiff of her fundamental constitutional right to control and direct the upbringing and education their children in violation of the Fourteenth Amendment as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §1983.

145.    Defendants violated MCL 380.10 by infringing on Ms. Chaskey's fundamental parental rights and by failing to cooperate with her and unlawfully issuing a "no trespass" simply to silence and humiliate her, in direct violation of its own policies; thereby violating the Ms. Chaskey's constitutional right to control and direct the upbringing and education of her son.

146.    Likewise, her established fundamental right was described by the United States Supreme Court to "participate in the care, custody and control" of her minor children. *Troxel.*

147.    To satisfy strict scrutiny, Defendants must prove that the infringement of the Plaintiff's rights is narrowly tailored to serve a compelling interest.

148.    Defendants will not be able to satisfy strict scrutiny. Since the basis for the "No Trespass" is completely false, they would not even be able to satisfy a rational basis standard.



149.    It is unequivocal that public schools have a compelling interest in maintaining order and safety to create a learning environment for their students. However, nothing Ms. Chaskey did threatened that compelling interest. Likewise, Defendant Fullerton's, Defendant Mix's, Defendant Benson, and Defendant Horn's actions were not narrowly tailored to serve that end, in fact they were not tailored at all to it. Defendant Horn even undermined the entire argument by allowing Ms. Chaskey on the premises for some activities and not others, just to harass and humiliate her.

150.    Defendants have unlawfully restrained Ms. Chaskey of constitutionally protected activity through their unlaw and vindictive "No Trespass."

151.    The "No Trespass" was arbitrary, capricious, irrational, and abusive conduct which unlawfully interferes with Ms. Chaskey's liberty interests protected by the Due Process Clause of the Michigan and United States Constitutions and other statutory law.

152.    Defendant Horn was even put on notice of this fact and still refused to rescind it.

153.    As a direct and proximate result of Defendants' violation of the Fourteenth Amendment, Plaintiff has suffered, is suffering, and will continue to suffer, irreparable harm, including the loss of her fundamental constitutional rights.

154.    As a direct or proximate result of these actions and inactions by Defendants, Plaintiff sustained and continues to sustain injuries, including but not limited to physical pain and suffering, mental anguish, fright, shock, embarrassment, humiliation, mortification, damage to reputation, disruption of personal life, loss of enjoyment of the ordinary pleasures of living, medical conditions, post-traumatic stress disorder, and other damages known and unknown.



<u>**COUNT IX**</u>
<u>**42 USC § 1985**</u>
<u>**CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS**</u>

155.    Plaintiff incorporates by reference all preceding paragraphs as if fully restated herein.

156.    42 USC 1985 provides in part:

> [i]f two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws; … the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

157.    Defendants entered into a conspiracy with one another and with other parties whose names are unknown to Plaintiff for the purpose of impeding, hindering, obstructing, or defeating the due course of justice.

158.    The Defendants exercised this conspiracy against Plaintiff with a meeting of the minds to a common scheme or plan.

159.    Defendants entered into a conspiracy with one another with the intent to deny Plaintiff for including but not limited to the intent to deny Plaintiff's rights under the First, Fourth, and Fourteenth Amendments, and the Michigan Constitution, as set forth above.

160.    In furtherance of the objectives of the conspiracy referred to in the preceding paragraph, Defendants either did or caused to be done the following overt acts:

- Retaliated against Plaintiff for exercising her right to the freedom of speech;



- Retaliated against Plaintiff for exercising her right to petition via filing a civil lawsuit;

- Denied Plaintiff her right to be involved in her child's education through false pretenses.

- Secured a search warrant and arrest warrant against Plaintiff through perjured testimony when no probable cause actually existed.

- Had Plaintiff detained and arrested through falsehood when no probable cause existed; and,

- Malicious prosecution of Plaintiff through use of perjured testimony and knowing a lack of probable cause existed.

161.    Each of the acts listed above committed by Defendants were done in furtherance of the conspiracy referenced and described above.

162.    As a result of the conspiracy committed by Defendants, Plaintiff was deprived of her civil rights, including: the right to free speech, petition the government, be free from unreasonable arrests, be free from unreasonable searches and seizures, be free from malicious and false prosecution, and participate in her child's education.

163.    As a direct and proximate result of these actions and inactions by Defendants, Plaintiff sustained and continues to sustain injuries, including but not limited to physical pain and suffering, mental anguish, fright, shock, embarrassment, humiliation, mortification, damage to reputation, disruption of personal life, loss of enjoyment of the ordinary pleasures of living, medical conditions, post-traumatic stress disorder, and other damages known and unknown.



## COUNT X
## 42 USC § 1986
## NEGLECT TO PREVENT

164. Plaintiff incorporates by reference all preceding paragraphs as if fully restated herein.

165. It is a violation of 42 USC 1986 for any person with "knowledge that any of the wrongs conspired [under 1985] to be done … are about to be committed," and, while having "power to prevent or aid in preventing the commission of same" "neglects or refuses to do so."

166. As such, the Defendants knew that wrongs conspired to be done were about to be committed.

167. The actions taken to conspire and commit the wrongs at issue *a fortiori* includes the power to prevent or aid in preventing the same, and the Defendants chose not to do so.

168. As a direct and proximate result of these actions and inactions by Defendants, Plaintiff sustained and continues to sustain injuries, including but not limited to physical pain and suffering, mental anguish, fright, shock, embarrassment, humiliation, mortification, damage to reputation, disruption of personal life, loss of enjoyment of the ordinary pleasures of living, medical conditions, post-traumatic stress disorder, and other damages known and unknown.

## COUNT XI
## ADDITIONAL MICHIGAN CONSTITUTIONAL VIOLATIONS

169. Plaintiff incorporates by reference all preceding paragraphs as if fully restated herein.

170. By reason of the aforementioned training, supervision, acts, policies, practices, customs and procedures created, adopted, and enforced under color of state law, Defendants



Onaway, Fullerton, Horn, and Mix deprived Ms. Chaskey of her rights under Michigan's

Constitution of 1963 as follows:

      a) **Article I, §5 Freedom of speech and of press.** Defendants' unlawful "no

          trespass" as described above, denied Plaintiff the right to "freely speak, write,

          express and publish his views on all subjects" and restrain or abridge her liberty

          of speech, and was in retaliation for her protected activity.

      b) **Article VIII, §2 Free public elementary and secondary schools;**

          **discrimination.** Defendants' unlawful "no trespass", and Defendant Fullerton's

          perjured testimony as described above, denied Plaintiff her right to participate in

          Michigan's "system of free public elementary and secondary schools as defined

          by law.

171.    Onaway's training, supervision, policies, practices, customs, and procedures,

punished and imposed discipline on Ms. Chaskey for exercising her state constitutional right to

free speech and other rights as stated above. Defendants' actions injure her by chilling Ms.

Chaskey's speech and constitutionally protected activity through threat of discipline and the "no

trespass" issued to her.

172.    Onaway's training, supervision, policies, practices, customs, and procedures, have

deprived Plaintiffs of the constitutional right to receive a free public education as guaranteed

under Article VIII, §2.

173.    As a direct and proximate result of Defendants' violation of the state

constitutional provisions specified above, Plaintiff has suffered, is suffering, and will continue to

suffer, irreparable harm, including the loss of her fundamental constitutional rights, entitling her



to declaratory and injunctive relief. Additionally, Plaintiff is entitled to nominal damages and compensatory damages for the loss of her state constitutional rights.

## COUNT XII
## ABUSE OF PROCESS

174.    Plaintiff incorporates by reference all preceding paragraphs as if fully restated herein.

175.    Abuse of process requires "'[f]irst, the existence of an ulterior purpose, and second, an act in the use of the process not proper in the regular prosecution of the proceeding.'" *Spear v Pendill*, 164 Mich 620, 623, 130 NW 343 (1911) (quoting 1 Cooley on Torts 355–356 (3d ed 1906)).

176.    Defendants abused the criminal investigatory process by using it for their ulterior motives or purposes to cause vexation, trouble, embarrassment, damage to Plaintiff's community reputation and as retaliation for Plaintiff's actions as described above. This use of the process was not legitimate, regular, or legal.

177.    Defendants' corroborating acts include, but are not limited to:

- Searching and seizing Plaintiff's phone based on a sworn affidavit the Defendants knew or should've known to be false;

- Arresting and prosecuting Plaintiff for a felony based on information the Defendants knew or should've known to be false;

- Issuing a "no trespass" to Plaintiff based on information the Defendants knew or should've known to be false;

- Making materially false statements about Plaintiff in the "victim impact statement";



- Not allowing Plaintiff back into Onaway, even after a judge cited there was no legal justification for it, OR even *after the entire case was dismissed;*

- Issuing arbitrary conditions of when Plaintiff could or could not be on Onaway's premises, even after being warned there was no basis for this, and Plaintiff's rights were being violated;

- Disseminating false and defamatory information in attempts to discredit and harm Plaintiff and delegitimize her concerns; and,

- Other reasons that may become apparent during the discovery process.

178.    Defendants' actions, as described above, were for the purpose to cause Plaintiff vexation, trouble, harassment, embarrassment, retaliation, and loss of her community reputation.

179.    Defendants' actions were willful and intentional.

180.    The allegations and misuse of the criminal investigatory process was improper since Defendants knew, or should have known, that the allegations regarding Plaintiff's actions were false.

181.    As a direct or proximate result of these actions and inactions by Defendants, Plaintiff sustained injuries and continues to sustain, including but not limited to physical pain and suffering, mental anguish, fright, shock, embarrassment, humiliation, mortification, damage to reputation, disruption of personal life, loss of enjoyment of the ordinary pleasures of living, medical conditions, post-traumatic stress disorder, and other damages known and unknown.

## COUNT XIII
## GROSS NEGLIGENCE

182.    Plaintiff incorporates by reference all preceding paragraphs as if fully restated herein.



183.    The governmental agencies that employed Defendants were engaged in the exercise or discharge of a governmental function.

184.    Defendants' conduct amounted to gross negligence that was the direct and proximate cause of Plaintiffs' injuries and damages.

185.    At the time of the incidents complained of herein, Defendants had a duty to perform their employment activities so as not to endanger or cause harm to Plaintiff.

186.    Notwithstanding these duties, Defendants breached their duty with deliberate indifference and gross negligence and without regard to Plaintiff's rights and welfare, which caused injuries and damages to Plaintiff.

187.    Defendants knew or should have known that by breaching these duties, harm would come to Plaintiff.

188.    That according to MCL 691.1407(2), the breach of Defendants' duty to exercise reasonable care was reckless and amounted to gross negligence.

189.    That as a direct and proximate result of Defendants' indifferent/grossly negligent acts and/or omissions, Plaintiff suffered injuries and damages.

190.    Defendants' actions were so egregious and so outrageous that Plaintiff's damages were heightened and made more severe, thus Plaintiff is entitled to compensatory and exemplary damages.

191.    As a direct or proximate result of these actions and inactions by Defendants, Plaintiff sustained injuries and continues to sustain, including but not limited to physical pain and suffering, mental anguish, fright, shock, embarrassment, humiliation, mortification, damage



to reputation, disruption of personal life, loss of enjoyment of the ordinary pleasures of living, medical conditions, post-traumatic stress disorder, and other damages known and unknown.

**COUNT XIV**
**DEFAMATION**

192.    Plaintiff incorporates by reference all preceding paragraphs as if fully restated herein.

193.    Defendants Fullerton, Hart, Mix, and Brewbaker (for purposes of this section, "Defamation Defendants") made materially false statements that Ms. Chaskey committed a felony.

194.    Defamation Defendants published or otherwise made the remarks to third parties with knowledge of the falsity of the statements or in reckless disregard of their truth or falsity.

195.    These statements were with the intent to harm Ms. Chaskey's reputation in the community and to discredit her, for the reasons stated above.

196.    Defamation Defendants made statements of fact/ opinion that appear based on some undisclosed fact. M Civ JI 118.01–.02 (citing *Gertz v Robert Welch, Inc*, 418 US 323 (1974)).

197.    Defendants' actions were defamation per se. Damages are presumed in cases involving defamation per se; such as words imputing that the plaintiff  has committed a crime, MCL 600.2911(1) *Linebaugh v Sheraton Michigan Corp*, 198 Mich App 335, 497 NW2d 585 (1993).

198.    As a direct or proximate result of these defamatory acts by Defendants, Plaintiff sustained and continues to sustain injuries, including but not limited to physical pain and



suffering, mental anguish, fright, shock, embarrassment, humiliation, mortification, damage to reputation, disruption of personal life, loss of enjoyment of the ordinary pleasures of living, medical conditions, post-traumatic stress disorder, and other damages known and unknown.

### COUNT XV
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

199.    Plaintiff incorporates by reference all preceding paragraphs as if fully restated herein.

200.    Defendant's conduct was intentional, and for the purposes of silencing, injuring, and depriving Ms. Chaskey of her constitutional rights, as described above.

201.    Defendant's conduct as outlined above was extreme, outrageous, and of a character not to be tolerated by a civilized society.

202.    Defendant's conduct as outlined above was for an ulterior motive or purpose.

203.    Defendant's conduct resulted in severe and serious emotional distress.

204.    As a direct or proximate result, Plaintiff sustained and continues to sustain injuries, including but not limited to physical pain and suffering, mental anguish, fright, shock, embarrassment, humiliation, mortification, damage to reputation, disruption of personal life, loss of enjoyment of the ordinary pleasures of living, medical conditions, post-traumatic stress disorder, and other damages known and unknown.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff ERIN JO CHASKEY respectfully requests this Honorable Court to grant her the following relief, jointly and several against all Defendants, for all of the reasons set forth in the complaint above:



a) Actual and compensatory damages, in the amount of $20 million dollars, or in an amount to be proven at trial, for the abuse and injuries Ms. Chaskey so wrongly suffered by Defendants' unlawful, unconstitutional, and unjustified conduct;

b) Punitive and exemplary damages to the extent allowed by law for Defendants' conduct by evil motive or intent, and/or reckless or callous indifference to Ms. Chaskey's rights;

c) Attorney's fees for Ms. Chaskey having to bring this action to vindicate her rights that she was so wrongfully deprived of, pursuant to 42 USC § 1988(b); and,

d) Interests, costs, and such other and further relief as is just and proper.

Respectfully Submitted,

July 14, 2022

_____
Daren A. Wiseley (P85220)
Attorney for Erin J. Chaskey
WISELEY LAW, PLLC

