UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIN JO CHASKEY,

               Plaintiff,

-vs-

ONAWAY AREA COMMUNITY
SCHOOLS; MARTY MIX; ROD
FULLERTON; MICHAEL
BENSON; MINDY HORN;
PRESQUE ISLE COUNTY;
JOSEPH BREWBAKER; DAVID
SCHMOLDT; AND KENNETH
RADZIBON,

               Defendants.

_____ /

CA: 22-11380

HON: THOMAS L. LUDINGTON
MAG. PATRICIA T. MORRIS

| | |
|---|---|
| HARRIS LAW, PC<br>Daniel J. Harris (P58279)<br>Attorney for Plaintiff<br>410 Petoskey Street<br>Petoskey, MI 49770<br>(231) 347-4444<br>dan@nmilawyers.com<br><br>O'NEILL WALLACE<br>Gregory W. Mair  (P67465)<br>Kailen C. Piper (P82865)<br>Attorneys for Defendants School Dist.,<br>Mix, Fullerton, Benson and Horn<br>300 St. Andrews Rd., Ste. 302<br>Saginaw, MI  48605-1966<br>(989) 790-0960<br>gmair@owdpc.com | ROSATI SCHULTZ JOPPICH<br>& AMTSBUECHLER PC<br>By:  Holly S. Battersby  (P72023)<br>Michael T. Berger (P77143)<br>Attorneys for Presque Isle Co,<br>Brewbaker, Schmoldt and Radzibon<br>27555 Executive Drive, Ste. 250<br>Farmington Hills, MI  48331<br>(248) 489-4100<br>hbattersby@rsjalaw.com<br>mberger@rsjalaw.com |

_____ /

## **PRESQUE ISLE COUNTY AND ONAWAY AREA COMMUNITY SCHOOLS DEFENDANTS' JOINT MOTION TO COMPEL DISCOVERY FROM PLAINTIFF**

All Defendants, by and through their respective attorneys, move to compel Plaintiff Erin Chaskey to fully and completely respond to Presque Isle Defendants' Interrogatories 4 and 5, as well as Request to Produce 1. Defendants also move to compel Chaskey to fully respond to Requests to Produce 10, 13, and 14 and provide a detailed privilege log for any documents she asserts are protected, for the reasons set forth in the attached Brief. Defendants sought, but did not obtain, concurrence in the relief requested herein during a phone conference with Plaintiffs' counsel, necessitating this Motion.

WHEREFORE, Defendants respectfully request that this Honorable Court order Plaintiff to fully and completely respond to Interrogatories 4 and 5 and Request to Produce 1, providing medical authorizations for her medical providers, as well as fully respond to Requests to Produce 10, 13 and 14, providing a privilege log  for documents she asserts are protected, within 7 days of this Court's Order, or have her claim for physical injury and/or emotional damages dismissed.

<div style="margin-left:40%">

ROSATI SCHULTZ JOPPICH
& AMTSBUECHLER PC

s/ Michael T. Berger
Attorneys for Presque Isle Co,
Brewbaker, Schmoldt and Radzibon
27555 Executive Drive, Ste. 250
Farmington Hills, MI  48331
(248) 489-4100
mberger@rsjalaw.com
(P77143)

</div>

DATED:  January 23, 2023

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIN JO CHASKEY,

        Plaintiff,

-vs-

ONAWAY AREA COMMUNITY
SCHOOLS; MARTY MIX; ROD
FULLERTON; MICHAEL
BENSON; MINDY HORN;
PRESQUE ISLE COUNTY;
JOSEPH BREWBAKER; DAVID
SCHMOLDT; AND KENNETH
RADZIBON,

        Defendants.

_____ /

CA: 22-11380

HON: THOMAS L. LUDINGTON
MAG. PATRICIA T. MORRIS

HARRIS LAW, PC
Daniel J. Harris (P58279)
Attorney for Plaintiff
410 Petoskey Street
Petoskey, MI 49770
(231) 347-4444
dan@nmilawyers.com

O'NEILL WALLACE
Gregory W. Mair (P67465)
Kailen C. Piper (P82865)
Attorneys for Defendants School Dist.,
Mix, Fullerton, Benson and Horn
300 St. Andrews Rd., Ste. 302
Saginaw, MI 48605-1966
(989) 790-0960
gmair@owdpc.com
_____ /

ROSATI SCHULTZ JOPPICH
& AMTSBUECHLER PC
By: Holly S. Battersby (P72023)
Michael T. Berger (P77143)
Attorneys for Presque Isle Co,
Brewbaker, Schmoldt and Radzibon
27555 Executive Drive, Ste. 250
Farmington Hills, MI 48331
(248) 489-4100
hbattersby@rsjalaw.com
mberger@rsjalaw.com

## PRESQUE ISLE COUNTY AND ONAWAY AREA COMMUNITY SCHOOLS DEFENDANTS' MOTION TO COMPEL DISCOVERY FROM PLAINTIFF

# TABLE OF CONTENTS

INDEX OF AUTHORITIES.................................................................................ii

MOST CONTROLLING AUTHORITY...............................................................v

ISSUES PRESENTED.........................................................................................vi

INTRODUCTION ...............................................................................................1

BACKGROUND .................................................................................................2

GENERAL RULES GOVERNING DISCOVERY ..............................................8

ANALYSIS..........................................................................................................11

    I.    Interrogatory No. 4...............................................................................11

    II.   Interrogatory No. 5...............................................................................16

    III.  Request to Produce No. 1......................................................................19

    IV.  Request to Produce Nos. 10, 13 and 14 ................................................20

CONCLUSION ....................................................................................................25

# INDEX OF AUTHORITIES

## *Cases*

*Boegh v. Harless*,
No. 518CV00123TBRLLK, 2021 WL 1923365 (W. D. Ky. May 13, 2021) ................................................................................................ 14, 16

*Burghardt v. Ryan*,
No. 5:19-CV-325, 2020 WL 4350049 (N.D. Ohio July 29, 2020)........................9

*Cooey v. Strickland*,
269 F.R.D. 643 (S.D. Ohio 2010) ................................................................ 11, 24

*Cratty v. City of Wyandotte*,
296 F. Supp. 3d 854 (E.D. Mich. 2017)..............................................................9

*Davis v. Caruso,*
No. 07-CV-11740-DT, 2009 WL 931165 (E.D. Mich. March 31, 2009) ...........13

*Hancock v. Dodson*,
958 F.2d 1367 (6th Cir. 1992) ............................................................................16

*In re Bankers Tr. Co.*,
61 F.3d 465 (6th Cir. 1995) ................................................................................19

*McCormick v. Brzezinksi*,
No. 08–CV–10075, 2008 WL 4965343 (E.D. Mich. Nov.18, 2008) .................13

*Mikko v. Smock*,
No. 10-12845, 2012 WL 8963809 (E.D. Mich. Sept. 19, 2012) ........................13

*Ross v. City of Memphis*,
423 F.3d 596 (6th Cir. 2005) ..............................................................................24

*SPX Corp. v. Bartec USA, LLC*,
247 F.R.D. 516 (E.D. Mich. 2008) .....................................................................24

*Vartinelli v. Caruso*,
2008 WL 2397666 (E.D. Mich. June 10, 2008) ..................................................13

*Statutes*

MCL 333.26269(1)(c) ..................................................................................19

MCL 380.10 ...............................................................................................4

*Rules*

Fed. R. Civ. P. 26(b)(1) .............................................................................8, 9

Fed. R. Civ. P. 26(b)(5) ......................................................................... 10, 24

Fed. R. Civ. P. 26(g)(1)(A) .........................................................................19

Fed. R. Civ. P. 33 ............................................................................... 8, 12, 15

Fed. R. Civ. P. 33(a)(2) .................................................................................8

Fed. R. Civ. P. 33(b)(2) .................................................................................9

Fed. R. Civ. P. 33(b)(4) .................................................................................9

Fed. R. Civ. P. 34 ..........................................................................................8

Fed. R. Civ. P. 34(a) .....................................................................................8

Fed. R. Civ. P. 34(b)(2)(A) ............................................................................9

Fed. R. Civ. P. 34(b)(2)(B) .........................................................................9, 24

Fed. R. Civ. P. 34(b)(2)(B)-(C) ......................................................................9

Fed. R. Civ. P. 34(b)(2)(C) ...........................................................................10

Fed. R. Civ. P. 37 ........................................................................................11

Fed. R. Civ. P. 37(a)(3)(iii)-(iv) ....................................................................11

Fed. R. Civ. P. 37(a)(4) .................................................................................9

Fed. R. Civ. P. 37(a)(5)...........................................................................................11

*Regulations*

CFR § 164.524(c)(4)............................................................................................19

## MOST CONTROLLING AUTHORITY

Fed. R. Civ. P. 26

Fed. R. Civ. P. 33

Fed. R. Civ. P. 34

Fed R. Civ. P. 37

## ISSUES PRESENTED

I.    Whether Plaintiff, Erin Chaskey, should be compelled to answer Interrogatories and Requests to produce regarding her healthcare history?

Defendants state:     "Yes"

Plaintiff states:     "No"

II.    Whether Plaintiff, Erin Chaskey, should be compelled to produce communications that are relevant to her claims in this case?

Defendants state:     "Yes"

Plaintiff states:     "No"

III.    Whether Plaintiff, Erin Chaskey, should be compelled to produce a detailed privilege log outlining the documents responsive to Presque Isle Defendants' requests to produce 10, 13, and 14, which she claims privilege to?

Defendants state:     "Yes"

Plaintiff states:     "No"

**INTRODUCTION**

Plaintiff, Erin Chaskey, recorded a private conversation between the Onaway Area Community School Superintendent and a School Board Member, while those two were in the Superintendent's office. They had that conversation after school hours and did not know that Chaskey was in the school district building. Despite that, Chaskey recorded their conversation without their knowledge or consent. As a result, Chaskey was charged with eavesdropping and bound over following a preliminary examination. Afterward, she moved to quash that bind-over, a request that the Circuit Court handling that matter ultimately granted. She now brings a plethora of claims against Presque Isle County, the Presque Isle County Sheriff, a Sheriff's Deputy, the County Prosecutor ("the Presque Isle County Defendants") as well as Onaway Area Community Schools, Principal Marty Mix, Superintendent Rod Fullerton, School Board member Michael Benson, School Board President Michael Hart, and Interim Superintendent Mindy Horn ("the Onaway Defendants")[1], seeking damages for physical injury and a laundry list of emotional damages.

Through discovery, Defendants have sought basic information regarding Chaskey's health history, including authorizations for the release of her healthcare records. Chaskey objected. Defendants jointly request an order compelling Chaskey to fully and completely respond to discovery regarding her health history.

---

[1] Several Defendants have taken new positions since the incidents giving rise to this lawsuit.

1

Defendants also requested that Chaskey produce communications regarding the incidents alleged in her Complaint. She failed to produce any responsive documents, instead objecting on the basis of attorney-client privilege without producing a privilege log supporting that objection. Defendants believe that Chaskey has had written or electronic communications regarding the incidents alleged in her complaint besides communications with her lawyer. They ask that this Court compel Chaskey to produce those records, along with a detailed privilege log outlining any claims of privilege to any responsive records.

## BACKGROUND

Chaskey is a parent of teenaged children who attended school in the Onaway Area Community School District. (1st Amended Complaint – ECF No.10, PageID 108). She alleges that she became aware of an Onaway Area Community School District teacher whom "was using a Go Fund Me to raise money for a controversial and political book to be taught in her class." (1st Amended Complaint – ECF No.10, PageID 108). She contends that she was a very involved member of her local community and that she brought her concerns about that teacher to several Onaway Area Community School District officials. (1st Amended Complaint – ECF No.10, PageID 108-111). According to her complaint, Chaskey's relationship with several officials soured over the time she expressed her dissatisfaction with the curriculum the school district taught. (1st Amended Complaint – ECF No.10, PageID 108-111).

2

Chaskey avers that on or about October 14, 2021, she went to an Onaway Area Community School District building, after school hours, to pick up an application to become one of the board members of that school district. (1st Amended Complaint – ECF No. 10, PageID.110-111). The School District's security camera recorded her accessing the locked building when an individual exited the building and held the door open for her. Once inside, she entered the main office, but the secretary had already left for the day. (1st Amended Complaint – ECF No. 10, PageID.111). While she waited at the counter, she heard then-Superintendent Fullerton and School Board Member Benson talking about her. (1st Amended Complaint – ECF No. 10, PageID.111). Chaskey pulled out her phone to record the conversation she heard from in Fullerton's office, located down the hallway from the main office. (1st Amended Complaint – ECF No. 10-6, PageID.164). Principal Marty Mix entered the main office and discovered Chaskey in the office, then advised Fullerton and Benson of her presence. (1st Amended Complaint, ECF 10, PageID 111). The officials realized that Chaskey recorded the conversation after a review of surveillance footage.

Chaskey's 1st Amended Complaint contends that on October 20, 2021, Deputy Schmoldt approached her with a search warrant for her phone. (1st Amended Complaint – ECF No. 10, PageID.112). She alleges that Deputy Schmoldt prepared an affidavit for an arrest warrant and that a magistrate judge issued that warrant for

3

her arrest due to eavesdropping. (1st Amended Complaint – ECF No. 10, PageID.114; 1st Amended Complaint – ECF No. 10-6, PageID.164-165). After a preliminary examination, a District Court Judge found that there was probable cause for the eavesdropping charge and bound Chaskey over for trial in the Circuit Court. (**Ex. 1** – Prelim Exam Trans., pp. 52-54). While in the Circuit Court, Chaskey moved to quash the bind over, a request that the Circuit Court Judge granted. (**Ex. 2** – Motion to Quash Transcript, pp. 29-30).

Chaskey filed this instant action and brings the following Federal Law claims against the Defendants: 1st Amendment Retaliation, 1st Amendment Right to Petition, Seizure of Property without Probable Cause, False Arrest, Malicious Prosecution, Exceeding the Scope of a Search Warrant, Deprivation of Substantive Due Process, Conspiracy to Interfere with Civil Rights and Neglect to Prevent. (1st Amended Complaint – ECF No. 10). She also brings the following state law claims: Malicious Prosecution, Deprivation of Due Process under the Michigan Constitution and MCL 380.10, Michigan Constitutional Violations of Free Speech, Abuse of Process, Gross Negligence, Defamation, and Intentional Infliction of Emotional Distress. (1st Amended Complaint – ECF No. 10). She seeks damages for "physical pain and suffering, mental anguish, fright, shock, embarrassment, humiliation, mortification, damage to reputation, disruption of personal life, loss of enjoyment of the ordinary pleasures of living, medical conditions, post-traumatic stress disorder,

and other damages known and unknown." (1ˢᵗ Amended Complaint – ECF No. 10). She seeks somewhere between $7,500,000 to $20,000,000 in damages. (1ˢᵗ Amended Complaint, ECF 10, PageID.141; **Ex. 3** – Plt. Initial Disclosures).

Chaskey's claimed psychological and mental distress damages appear to be based on a theory that the incidents described in her Complaint exacerbated her pre-existing conditions. Defendants believe that because Chaskey released her medical records from Thunder Bay Community Health Services to Defendants, early in discovery. Those records reveal that Chaskey has a long history of mental health treatment, including diagnoses of depression, anxiety, and two types of bipolar disorder, which pre-date the events identified in her complaint. (**Ex. 4** – Thunder Bay Community Health Service Records, Bates 001-004). She started psychiatric treatment with NP JoAnne Hardered in Petoskey, about 6 years prior to her filing suit because at times she would feel overwhelmed with sadness and then be happy with so much energy. (Ex. 4 – Thunder Bay Community Health Service Records, Bates 002). However, her treatment may have started several years before that, as demonstrated by a 2011 medical record showing that Chaskey took Zoloft to treat depression. (Ex. 4 – Thunder Bay Community Health Service Records, Bates 273).

The evidence known to Defendants also shows that Chaskey suffered from other significant stressors in her life at the same time as the incidents alleged in her complaint. In December of 2021, after Chaskey received her eavesdropping charge,

she sought treatment for weight loss. (Ex. 4 – Thunder Bay Community Health Service Records, Bates 174). At that time, she reported several stressors in her life aside from the charges at issue, such as Christmas, bills, her daughter being in her senior year of high school, and her father-in-law being crushed on a farm. (Ex. 4 – Thunder Bay Community Health Service Records, Bates 174).

Following the dismissal of her charges, Chaskey continued to suffer from psychiatric problems and stress. On August 7, 2022, she suffered serious medical issues, including metabolic acidosis, while she was in Florida with a man she was having an affair with. (Ex. 4 – Thunder Bay Community Health Service Records, Bates 001; **Ex. 5** – Arrest Records). On that day, she had an "incident" involving that man, got physically sick, and needed to go to the ER. (Ex. 4 – Thunder Bay Community Health Service Records, Bates 001). Based on a police report, coupled with her medical records, it appears that the man she was with was her criminal defense lawyer, Daren Wiseley.  (Ex. 4 – Thunder Bay Community Health Service Records, Bates 001; Ex. 5 – Arrest Records[2]). EMS arrived at the scene and transported Chaskey for treatment. Following release from the hospital, she was involuntarily committed in Florida for several days, which was seemingly a

---

[2] According to this record, Attorney Wiseley was also in Florida on that day and assisting a friend who was sick. That information became public knowledge when he was subsequently arrested for allegedly assaulting a firefighter during that incident.

6

traumatic experience. (Ex. 4 – Thunder Bay Community Health Service Records, Bates 001, 155).

Chaskey returned to Michigan for treatment and reported that one of the stressors in her life is the town she lives in, stating, "I hate it here." (Ex. 4 – Thunder Bay Community Health Service Records, Bates 001). Another nuisance is that her husband now monitors her phone (presumably due to the affair). (Ex. 4 – Thunder Bay Community Health Service Records, Bates 002). She advised treaters that she has no support system and that she misses the man she was having an affair with. (Ex. 4 – Thunder Bay Community Health Service Records, Bates 002).

Chaskey's physical pain and suffering claim appears to be based on an exacerbation of a pre-existing pain theory. She has a long history of migraine headaches, which her treaters have not identified the root cause for. (Ex. 4 – Thunder Bay Community Health Service Records, Bates 346). At one point, it seems that they theorized that her headaches had a physical basis and were related to abnormality of her brain, but they ruled that out following MRIs. (Ex. 4 – Thunder Bay Community Health Service Records, Bates 311, 315).

Chaskey has had neck/back pain for over 10 years. (Ex. 4 – Thunder Bay Community Health Service Records, Bates 318-319). Her records do not identify what caused her pain in her neck/back, but she has a scoliosis diagnosis. (Ex. 4 – Thunder Bay Community Health Service Records, Bates 333).

7

Once discovery opened, the Presque Isle Defendants served "Presque Isle County Defendant's First Interrogatories and Requests to Produce to Plaintiff" on Chaskey to explore the bases for her claims of physical and psychological injury, including her alleged PTSD. (**Ex. 6** – Interrogatories and Requests to Produce). Although Chaskey originally released her Thunder Bay records to Defendants, she now claims the physician-patient privilege applies to the remainder of her healthcare records and refuses to sign additional releases. Her position severely prejudices Defendants and is contrary to well-established principles of law, as described below. (**Ex. 7** – Responses to Discovery). She also objected to producing communication she has had with others regarding the incidents alleged in her complaint, asserting a blanket attorney-client privilege objection. (Ex. 7 – Responses to Discovery).

## GENERAL RULES GOVERNING DISCOVERY

A party may seek discovery from another party through interrogatories and requests to produce documents. Fed. R. Civ. P. 33 and Fed. R. Civ. P. 34. Both discovery tools may only be used to probe into matters that fall within the scope of discovery, as set forth by Fed. R. Civ. P. 26(b)(1). Fed. R. Civ. P. 33(a)(2); Fed. R. Civ. P. 34(a). The scope of discovery has three elements: (1) the information sought must be relevant to a claim or defense, (2) the information must be proportional to the needs of the case, and (3) the information sought must not be privileged. Fed. R. Civ. P. 26(b)(1).

Relevance is a low bar when it comes to discovery and is defined as evidence that has "*any* tendency to make a fact more or less probable." *Cratty v. City of Wyandotte*, 296 F. Supp. 3d 854, 860 (E.D. Mich. 2017). Relevance during the discovery phase is necessarily broader than the scope of relevance at trial, having no limitations on the admissibility of evidence. *Burghardt v. Ryan*, No. 5:19-CV-325, 2020 WL 4350049, at *3 (N.D. Ohio July 29, 2020) (**Ex. 8**). There are six factors that go into the proportionality of a discovery request: (1) the issues at stake in the action, (2) the amount in controversy, (3) the parties' relative access to the information, (4) the parties' resources, (5) the importance of the discovery in resolving the issues, and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1).

A party must respond to interrogatories or requests to produce within 30 days and the responses must sufficiently address the discovery request made. Fed. R. Civ. P. 33(b)(2); Fed. R. Civ. P. 34(b)(2)(A); Fed. R. Civ. 37(a)(4). If a response is evasive or incomplete, it is treated as a failure to respond. Fed. R. Civ. 37(a)(4).

A party may object to an interrogatory or request to produce, in lieu of responding. Fed. R. Civ. P. 33(b)(4); Fed. R. Civ. P. 34(b)(2)(B)-(C). If a party chooses to object, the responding/objecting party must state the grounds for the objection with specificity. Fed. R. Civ. P. 33(b)(4); Fed. R. Civ. P. 34(b)(2)(B). With regard to a request to produce, any objection must also "state whether any responsive

materials are being withheld on the basis of that objection." Fed. R. Civ. P.

34(b)(2)(C). If a party withholds documents on the basis of a privilege, it must:

> (i) expressly make the claim; and
>
> (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5). That is typically done via a privilege log. One district court

has recommended that a privilege log contain the following categories:

> 1. A description of the document explaining whether the document is a memorandum, letter, e-mail, etc.;
>
> 2. The date upon which the document was prepared;
>
> 3. The date of the document (if different from # 2);
>
> 4. The identity of the person(s) who prepared the document;
>
> 5. The identity of the person(s) for whom the document was prepared, as well as the identities of those to whom the document and copies of the document were directed, "including an evidentiary showing based on competent evidence supporting any assertion that the document was created under the supervision of an attorney;"
>
> 6. The purpose of preparing the document, including an evidentiary showing, based on competent evidence, "supporting any assertion that the document was prepared in the course of adversarial litigation or in anticipation of a threat of adversarial litigation that was real and imminent;" a similar evidentiary showing that the subject of communications within the document relates to seeking

or giving legal advice; and a showing, again based on competent evidence, "that the documents do not contain or incorporate non-privileged underlying facts;"

7. The number of pages of the document;

8. The party's basis "for withholding discovery of the document (i.e., the specific privilege or protection being asserted); and

9. Any other pertinent information necessary to establish the elements of each asserted privilege."

*Cooey v. Strickland*, 269 F.R.D. 643, 649 (S.D. Ohio 2010).

Fed. R. Civ. P. 37 sets forth the mechanisms that allow the Court to resolve a dispute regarding an objection. Under that Rule, a party seeking discovery may move for an order compelling the opposing party to answer an interrogatory or to produce requested records. Fed. R. Civ. P. 37(a)(3)(iii)-(iv). If the Court grants a motion to compel, it may award the moving party with reasonable expenses, including attorney fees, against "the party… whose conduct necessitated the motion, the party or attorney advising that conduct, or both." Fed. R. Civ. P. 37(a)(5).

## ANALYSIS

### I.    Interrogatory No. 4

Presque Isle County Defendants Interrogatory #4 directed to Chaskey, states as follows:

11

> Prior to the incident alleged in your Complaint, did you suffer from any physical or mental disability, impairment, or illness? If so, please state the nature and extent of each disability, impairment and/or illness and the name and address of each physician or treater who rendered each diagnosis. Also identify by name, address, group number, any subscriber or other identification number, and subscriber name, any insurance company that any bills were submitted to in relation to any such treatment.

(Ex. 6 – Interrogatories and Requests to Produce). Chaskey responded, "Objection. Plaintiff's medical records are privileged and not discoverable," instead of providing a substantive response to this Interrogatory seeking basic information necessary to defend against Chaskey's physical and psychological injury claims. (Ex. 7 – Discovery Responses). The Court should overrule Chaskey's objection because it lacks merit.

Defendants expect that Chaskey's first argument in response to this motion will be that the information they seek is irrelevant to her claims. The language of her objection, however, does not invoke relevance and, therefore, any argument that the information is irrelevant should be deemed waived. Fed. R. Civ. P. 33 ("Any ground not stated in a timely objection is waived unless the court, for good cause, excused the failure"). Nevertheless, Chaskey's healthcare information from prior to the incidents alleged in her Complaint is relevant to her claims. She specifically alleges:

> As a direct or proximate result of these actions and inactions by Defendants, Plaintiff sustained and continues to sustain injuries, including but not limited to physical pain and suffering, mental anguish, fright, shock,

12

> embarrassment, humiliation, mortification, damage to
> reputation, disruption of personal life, loss of enjoyment
> of the ordinary pleasures of living, medical conditions,
> post-traumatic stress disorder, and other damages known
> and unknown.

(1st Amended Complaint – ECF 10). She also seeks $20 million from Defendants to compensate her for these alleged injuries.

Her intent to block Defendants from learning about her medical and mental health condition is contrary to the well-established rule that when a plaintiff places her physical or psychological condition at issue, she has made her medical records relevant to the case. *Davis v. Caruso,* No. 07-CV-11740-DT, 2009 WL 931165 at *5 (E.D. Mich. March 31, 2009) (**Ex. 9**) ("[w]ithout the ability to verify any alleged treatment, or lack thereof, counsel is hampered severely in the investigation of the basis of Plaintiff's claims and discovery in this case"); *Mikko v. Smock*, No. 10-12845, 2012 WL 8963809, at *2 (E.D. Mich. Sept. 19, 2012) (**Ex. 10**); *McCormick v. Brzezinksi,* No. 08–CV–10075, 2008 WL 4965343 (E.D. Mich. Nov.18, 2008) (**Ex. 11**) ("[G]iven that Plaintiff has put her medical condition at issue in this litigation, Defendants are entitled to discovery regarding Plaintiff's medical condition in order to properly defend this matter."); *Vartinelli v. Caruso,* 2008 WL 2397666, at *1 (E.D. Mich. June 10, 2008) (**Ex. 12**) (ordering discovery of plaintiff's medical records where plaintiff had put his medical condition at issue); *Boegh v. Harless*, No. 518CV00123TBRLLK, 2021 WL 1923365, at *5 (W.D. Ky. May 13,

13

2021) (**Ex. 13**) (holding the same when the plaintiff asserted a PTSD claim). When applying the above rules to this case, it should be clear that Chaskey has made her healthcare records relevant to her claims because her pleadings assert that she has experienced physical pain and suffering, along with psychological damages (including PTSD).

More importantly, when looking at the very limited healthcare records Chaskey has allowed Defendants to access,[3] it is apparent that all her healthcare records are relevant to her damages claims. She has a long history of mental health treatment with other providers starting at least in 2011. Each of her healthcare providers should have information regarding the psychiatric medication that she was taking in their records. Likewise, general practitioners, OBGYNs, and many other treaters typically conduct depression, anxiety and mental health screenings at office visits, information that is highly relevant and essential to Defendants' defense. Thus, Chaskey's healthcare records will have relevant information related to her mental distress claims, including her claim that she suffers from PTSD.

Her healthcare records also contain information that is highly relevant to her claim of physical injury. As outlined above, Chaskey has had decades of complaints about body pain and headaches. Her records should provide insight into whether

---

[3] Chaskey has failed to explain to Defendants why her Thunder Bay medical records (which she authorized Defendants to access) are not subject to the physician patient privilege, but her other healthcare records are somehow subject to that privilege.

those complaints were caused by, or exacerbated during, the incidents alleged in her Complaint, or arose from stressors that occurred thereafter.

For those reasons, the information sought in Presque Isle Defendants' interrogatory 4 is highly relevant to Chaskey's damages claims. Thus, even if she did not waive her relevance objection, it would have no merit.

Like with the relevance element, Chaskey has waived a proportionality objection by not specifically making it. See Fed. R. Civ. P. 33. However, even if she raises that argument in response to this motion, it should fail because Presque Isle Defendants' request is also proportional to the needs of the case. First, Chaskey has pleaded that she suffered physical and mental harm due of the incidents in her complaint, so her medical information is an issue at stake. Second, she seeks up to $20 million, which weighs in favor of disclosure of this information. Third, Defendants cannot access her medical information unless the objection is overruled. Fourth, the Defendants do not have the resources to obtain the sought after information without Chaskey's objection being overruled because they do not know the identity of all of her providers and cannot obtain records unless she signs an authorization. Fifth, her healthcare records are imperative in resolving whether Chaskey actually suffered physical or mental damages due to the incidents alleged in her Complaint, as outlined above. Sixth, there is very little burden for Chaskey to disclose the information Defendants seek because she can easily answer the

interrogatory at issue and provide Defendants authorizations to receive her healthcare records at their expense.

Finally, Chaskey's health history is not privileged, despite her objection. "[T]he federal courts do not recognize a federal physician-patient privilege . . . ." *Hancock v. Dodson*, 958 F.2d 1367, 1373 (6th Cir. 1992). Even so, the moment a plaintiff places his or her physical or mental well-being into issue in a lawsuit, he or she waives any physician/patient privilege that might otherwise protect that information. *Boegh*, *supra* (finding that a plaintiff waived her privilege when she asserted she suffered from PTSD as a result of the defendant's alleged wrongdoing). Chaskey is free to dismiss her physical and psychological injury claims, but, to-date, she has been unwilling to do so.

This Court should find Chaskey's objection without merit and overrule it. It should then compel Chaskey to answer Interrogatory 4 in full, within 7 days.

## II.  Interrogatory No. 5

Presque Isle Defendants' interrogatory number 5 asks Chaskey the following:

> Since the incident alleged in your Complaint, have you received any medical, psychological, psychiatric, counseling, or other treatment for any mental distress, medical condition, psychological condition, or any other condition whatsoever? If so,
>
> a.     Identify by name, address, and phone number whom you have treated with (this includes all psychiatric treaters, psychological treaters, medical providers, therapists, social workers, counselors, clergy members

16

and the like that you have sought treatment with);

      b.     Identify any diagnosis that you contend was caused by, exacerbated by, or otherwise related to the incident alleged in your Complaint;

      c. Identify by name, address, group number, any subscriber or other identification number, and subscriber name, any insurance company that any billing was submitted to; and

      d. Calculate any out-of-pocket costs that you contend you have sustained in relation to any treatment identified in response to this Interrogatory.

(Ex. 6 – Interrogatories and Requests to Produce). Chaskey appears to have responded in full to subsection (a). (Ex. 7 – Discovery Responses). However, she did not properly respond to the other subsections.

      She responded to subsection (b) by stating "All documentation of any kind has already been provided through Plaintiff's Initial Disclosures." (Ex. 7 – Discovery Responses). That response is evasive and incomplete because Chaskey's Initial Disclosures do not identify the physical or psychological diagnoses she contends were caused by the incidents alleged in her complaint. Her Complaint identifies PTSD, but also a plethora of other very general physical and emotional distress claims, which implies that she asserts that her pre-existing conditions, as outlined above, were exacerbated. In order to defend themselves, Defendants need to understand what specific physical or psychological conditions are at issue, so that they can understand the magnitude, nature and cause of Chaskey's alleged damages.

They may need experts to review Chaskey's records to opine on her damages claims. Chaskey's evasive answer and unwillingness to disclose the requested information has placed Defendants at a significant disadvantage because the time allotted for discovery in this Court's Case Management Order is quickly elapsing. She should, therefore, be compelled to provide a full and complete answer to this subsection.

Chaskey objected to subsection (c) by stating "Objection. Plaintiff's medical records are privileged and not discoverable." (Ex. 7 – Discovery Responses). The Court should overrule that objection for the same reasons it should overrule Chaskey's objection to Interrogatory number 4.

Chaskey responded to subsection (d) by stating, "Documents requested is not readily available to Plaintiff. Additional documentation will be supplemented as received." (Ex. 7 – Discovery Responses). Chaskey's answer is non-responsive to the interrogatory. The interrogatory does not request documents; it requested a calculation.

Presumably, Chaskey's response to subsection (d) is intended to convey that she has not calculated her purported medical expenses damages because she has not obtained her medical records. That is not an excuse for not answering the interrogatory, especially in light of the fact that she seeks $20 million in damages. The signature of a party or counsel on a discovery document "certifies that to the best of the person's knowledge, information, and belief formed after a reasonable

18

inquiry… it is complete and correct as of the time it is made." Fed. R. Civ. P. 26(g)(1)(A). A reasonable inquiry for that interrogatory should have included a review of documents within Chaskey's possession, custody, or control (i.e., anything available on demand).[4] Michigan law and HIPAA requires that healthcare providers make a patient's medical records available on demand. See MCL 333.26269(1)(c); 45 CFR § 164.524(c)(4). Because Chaskey requests an astonishingly high damages sum in this lawsuit, she presumably (or at least should have) requested her relevant healthcare records, reviewed them, and calculated the out-of-pocket expenses she allegedly incurred due to the incidents alleged in her Complaint. For those reasons, the Court should find that Defendants are entitled to this information to defend against Chaskey's claims and that Chaskey should be compelled to disclose it.

In all, Chaskey's objections and deficient responses to subsections (b)-(d) of Interrogatory 5 have no legal basis and severely disadvantage Defendants defense of her astronomical damage claim. She should be compelled to fully and completely answer that interrogatory within 7 days.

### III.    Request to Produce No. 1

The Presque Isle Defendants Request to Produce 1, subsections (b) and (c), asked Chaskey to produce authorizations for the release of "Any and all

---

[4] See *In re Bankers Tr. Co.*, 61 F.3d 465, 469 (6th Cir. 1995) (explaining that possession, custody, or control is defined as anything a party has a legal right to obtain on demand).

19

medical/mental health providers, including all psychiatric treaters, psychological treaters, medical treaters, therapists, social workers, counselors, clergy, identified in [her answers to] interrogatories" as well as "[a]ny and all health insurance companies identified in [her answers to] interrogatories." (Ex. 6 – Interrogatories and Requests to Produce). Chaskey responded to both by stating, "Objection. Plaintiff's medical records are privileged and are not discoverable." (Ex. 7 – Discovery Requests).

The Court should overrule those objections as well, for the same reasons set forth more thoroughly above. As explained, Chaskey has made her healthcare records relevant, proportional, and non-privileged by expressly placing her healthcare history at issue in this lawsuit. Thus, she should be required to produce authorizations responsive to those requests within 7 days.

## IV. Request to Produce Nos. 10, 13, and 14

The Presque Isle Defendants asked for copies of communications Chaskey had regarding the allegations in her case. Request to Produce 10 asked for

> Any and all correspondence (e.g., text messages, emails, direct messages, letters) that relates to the incident at the school that led to the charges against you, the charges against you, the subsequent court proceedings, the dismissal of the charges against you, your alleged damages, any solicitation of donations or assistance, or anything else that relates to the incident alleged in your Complaint. If you assert any responsive material to this request is privileged, produce that material with the purportedly privileged portion redacted and produce a privilege log identifying the date of the correspondence, the type of correspondence (e.g. text message), to whom

> the correspondence was directed or received from, the
> privilege asserted as to that specific correspondence, and
> a description sufficient enough to support your assertion
> of privilege without disclosing the contents of the material.
> (Ex. 6 – Interrogatories and Requested to Produce).

Request 13 sought:

> any and all documents (whether electronic or hardcopy),
> correspondence (e.g., text messages, emails, direct
> messages, letters), or other records that you received that
> relate to the criminal investigation identified in your
> Complaint. If you assert any responsive material to this
> request is privileged, produce that material with the
> purportedly privileged portion redacted and produce a
> privilege log identifying the date of the record, the type of
> record (e.g. text message), to whom the record was
> directed or received from, the privilege asserted as to that
> specific record, and a description sufficient enough to
> support your assertion of privilege without disclosing the
> contents of the material. (Ex. 6 – Interrogatories and
> Requested to Produce).

The final relevant request, number 14, asked for the following:

> any and all documents (whether electronic or hardcopy)
> correspondence (e.g., text messages, emails, direct
> messages, letters), or other records that you received that
> relate to the prosecution identified in your complaint. If
> you assert any responsive material to this request is
> privileged, produce that material with the purportedly
> privileged portion redacted and produce a privilege log
> identifying the date of the record, the type of record (e.g.
> text message), to whom the record was directed or
> received from, the privilege asserted as to that specific
> record, and a description sufficient to support your
> assertion of privilege without disclosing the contents of
> the material. (Ex. 6 – Interrogatories and Requested to
> Produce).

Chaskey objected to all three requests by stating, "Objection. Attorney Client Privilege." (Ex. 7 – Discovery Responses).

Chaskey's boilerplate objection does not follow the Federal Court Rules, nor does it provide enough information to Defendants to determine whether her claim of privilege is proper. First, based on Chaskey's objection, it appears that she interpreted this request in a narrow way, thinking that defense counsel only sought communication records from her legal counsel. That is not accurate. Presque Isle Defendants are seeking communication records from anyone, such as friends, family, or associates. For example, Chaskey wrote about the incidents described in her Complaint on her social media accounts, as demonstrated in the screen shots below.



22



**Erin Chaskey**
James Hollander Onaway area community schools. There is a long story leading up to it, but the basics of it are that after 16 months of being stone-walled my the school for me sling for oversight in a classroom, I entered the secretaries office 14 minutes after school was dismissed. I was there to obtain an application for a vacant school board seat. Upon entering the secretaries office, I heard a very loud conversation about my concerns, my efforts and concerns being mocked as well as THE SUPERINTENDENT AND A BORD MEMBER DISCUSSING HOW THEY WERE NOW LONGER COMMUNICATING VIA EMAIL so they couldn't be FOIA'd. As over the last 16 months they have continually lied, I stood in the Secretary's office and recorded them (they were down a hallway- the door open- in another office). I knew I needed documentation of them stating what they were doing. That said, I have been charged with felony eavesdropping. The media and courts, have portrayed me in a way (using very cherry-picked clips/facts), that in deed paint me in the light of some sort of "spying Karen".

Like  Reply  30w                                                          4

**Erin Chaskey**
Ronald Ozog my lawyer will kill me for saying this, but I won't be sad if it goes to a jury trial because then all of those who think the role they played in this has gone unnoticed, will be exposed. Those are actually the ones I hold the most disgust for, and am counting down the days until their charades of "innocence" will be made public.
I can weather the storm they have put through me through, but I don't think they will be able to handle to hurricane they are about to find themselves in!

Like  Reply  26w                                                          3

If Chaskey communicated with persons through social media about the incident in the school office, the criminal investigation, and her prosecution, it stands to reason she communicated with persons privately as well, such as through social media directed message or text message. Chaskey's response to those three requests to produce appears to be incomplete, so she should be ordered to review her communication records and produce information responsive to those requests within 7 days, or have her lawsuit dismissed.

23

Her objection is also procedurally defective. It does not specify whether she withheld any responsive materials on the basis of her objection. See Fed. R. Civ. P. 34(b)(2)(B). Nor did she provide a privilege log in compliance with Rule 26(b)(5). A privilege log is highly important in this case because some of Chaskey's communications with Attorney Wiseley may not be privileged, given that her healthcare records and the above-mentioned police reports evidences that they had a relationship extending beyond the attorney-client relationship. Indeed, the attorney-client privilege is narrow and only applies if the client

> 1) seeks legal advice (2) from a professional legal adviser in his capacity as such, (3) the communications relate to that purpose, (4) the communications are made in confidence (5) by the client, (6) are at the client's instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived.

*Ross v. City of Memphis*, 423 F.3d 596, 600 (6th Cir. 2005) (explaining that privilege is narrowly construed); *SPX Corp. v. Bartec USA, LLC*, 247 F.R.D. 516, 525 (E.D. Mich. 2008). Given the nature of their relationship, it is likely that not every communication between Attorney Wiseley and Chaskey fulfill the elements of the narrow attorney-client privilege. Chaskey, therefore, should be compelled to produce the communications that are responsive to the Presque Isle Defendants' discovery requests (including those she had with Attorney Wiseley), along with redactions of any communications that Chaskey asserts privilege to, including a detailed privilege log along the lines of *Cooey*, *supra*.

24

## CONCLUSION

Defendants request that this Court compel Chaskey to fully respond to interrogatories 4 and 5, request to produce 1(b) and (c), and request to produce 10, 13, and 14 within 7 days. To the extent that Chaskey claims privilege to items responsive to requests to produce 10, 13, and 14, the Court should compel her to provide a detailed privilege log. Defendants also ask that the Court warn Chaskey that her failure to comply with that order could lead to the dismissal of her claims. Finally, Defendants request the attorney fees incurred in the filing of this Motion.

ROSATI SCHULTZ JOPPICH
& AMTSBUECHLER PC

s/ Michael T. Berger
Attorneys for Presque Isle Co,
Brewbaker, Schmoldt and Radzibon
27555 Executive Drive, Ste. 250
Farmington Hills, MI  48331
(248) 489-4100
mberger@rsjalaw.com
(P77143)

DATED:  January 23, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2023, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to the following: Daniel J. Harris and Gregory W. Mair; and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: [none].

ROSATI SCHULTZ JOPPICH
& AMTSBUECHLER PC

s/ Michael T. Berger
Attorneys for Presque Isle Co, Brewbaker,
Schmoldt and Radzibon
27555 Executive Drive, Ste. 250
Farmington Hills, MI 48331
(248) 489-4100
mberger@rsjalaw.com
(P77143)

26